AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

**FILED**
09 October 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

United States of America
v.
Emily Velazquez-Estrada

*Defendant(s)*

Case No.3:26-mj-71332 MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 3, 2026 in the county of San Francisco in the Northern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Count 1: Distribution of Fentanyl.<br><br>Penalties:<br>• Imprisonment: 20 years (21 U.S.C. § 841(b)(1)(C))<br>• Fine: $1 million (21 U.S.C. § 841(b)(1)(C))<br>• Supervised Release: Min. 3 years – Max. life (21 U.S.C. § 841(b)(1)(C))<br>• Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))<br>• Forfeiture: 21 U.S.C. § 853(a) \| Deportation \| Denial of Federal Benefits |

This criminal complaint is based on these facts:

See attached affidavit of DEA Task Force Officer Declan Maher

☑ Continued on the attached sheet.

/s/ Declan Maher
*Complainant's signature*

Approved as to form *Kristina Green*
AUSA Kristina Green

Declan Maher, DEA Task Force Officer
*Printed name and title*

Sworn to before me by telephone.

Date: 10/08/2026

*Judge's signature*

City and state: San Francisco, CA

Honorable Alex Tse
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Declan J. Maher, a Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn, hereby declare as follows:

## INTRODUCTION

1. I make this affidavit in support of a Criminal Complaint and Arrest Warrant charging Emily Velazquez-Estrada (hereafter "VELAZQUEZ-ESTRADA") with distribution of a mixture or substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), on or about September 3, 2026, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts set forth in this affidavit are based on my own personal knowledge, my review of the reports and other records related to this investigation, information from databases, information obtained from law enforcement officers and witnesses, and information gained through my training and experience. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this affidavit, such information is also described in sum and substance and in relevant part.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint and arrest warrant, it does not set forth each and every fact that I, or others, have learned during the course of this investigation. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am employed as a Police Officer with the San Francisco Police Department

("SFPD") and have been so employed since February 2017. Since July 2023, I have been assigned to SFPD's Narcotics Division. Prior to that, I was a patrol officer assigned to the Tenderloin Station. Since January 2025, I have been assigned as a Task Force Officer ("TFO") with the DEA. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, execute search warrants, and make arrests for violations of federal law, including drug offenses.

5. I graduated from the Police Academy in February 2017. While in the Police Academy, I completed the basic narcotics-related training course. I have also completed additional training related to narcotics investigations, including the Robert Presley Institute of Criminal Investigation Core Course, CHP ARIDE (Advanced Roadside Impaired Enforcement) & FST (Field Sobriety Testing) training conducted by the Californian Highway Patrol, HIDTA Handling Confidential Informants, Wire Tap California DOJ State Certification Course, and the Western Regional Counterdrug Training Center drug identification course. I also attended the San Francisco Police Plainclothes Detective School, which has a component related to narcotics identification and investigations.

6. Through this training, I have received extensive instruction on various aspects of drug investigations, including the identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operations of drug trafficking organizations.

7. During my employment with SFPD, I have participated in over 100 controlled substance investigations. I have spoken with and reviewed statements made by confidential sources and witnesses who had personal knowledge of drug trafficking organizations. I have spoken with drug users regarding various subjects related to different controlled substances, including methods of consumption, usable amounts, prices, and common practices of users and sellers. I have also spoken with numerous experienced law enforcement officers concerning the methods and practices used by drug traffickers. Additionally, I have participated in many other aspects of drug investigations, including undercover operations, records research, and physical

surveillance. I have assisted in the execution of numerous search warrants and arrest warrants which have resulted in the seizure of controlled substances and the arrests of suspects.

8. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTES

9. Under Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), it is unlawful for any person to knowingly or intentionally distribute a federally controlled substance. Under 21 C.F.R. Section 1308.12, fentanyl is a Schedule II controlled substance.

## FACTS SUPPORTING PROBABLE CAUSE

10. Based on the facts described below, there is probable cause to believe that VELAZQUEZ-ESTRADA violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on her distribution of a mixture or substance containing a detectable amount of fentanyl to an undercover SFPD officer.

11. On the night of September 2, 2026, law enforcement officers with the San Francisco Police Department, San Francisco Sherrif's Department, the DEA, and the Federal Bureau of Investigation ("FBI") were conducting a "buy / bust" operation in the area of 87 6th Street, in San Francisco's Tenderloin neighborhood of San Francisco. A "buy/bust" operation is a law-enforcement technique where an undercover police officer purchases narcotics from a drug dealer in exchange for U.S. currency. Once the exchange is made, law enforcement officers then arrest the dealer of the narcotics. The area of the Tenderloin in which the "buy/bust" operation

occurred is well known to officers as an area where narcotics are illegally bought, sold, and consumed, particularly during the night hours. This drug activity results in multiple calls from citizens about drug dealing and the consumption of illegal drugs in the area and overdose deaths and other harms to those using these drugs.

12. Around 0014 hours on September 3, 2026, a law enforcement officer acting in an undercover capacity (hereafter the "Undercover Officer" or "UC") walked northbound on 6th Street and crossed paths with an unknown male. The UC asked the male individual if he had "Iso." "Iso" is a common street term for fentanyl. The male individual pointed to an adult female with shoulder length red, curly hair, wearing a black sweater, light gray leggings, and black and white "Nike" shoes, who was standing approximately two feet away from the UC, on the east sidewalk of 6th Street between Mission Street and Jesse Street in front of 87 6th Street. The female was later identified as VELAZQUEZ-ESTRADA.

13. The UC approached VELAZQUEZ-ESTRADA and asked for "Iso". VELAZQUEZ-ESTRADA asked the UC how much fentanyl they wanted. The UC replied that they wanted a gram. VELAZQUEZ-ESTRADA provided the UC with two small baggies containing a white chalk-like substance. In exchange, the UC provided VELAZQUEZ-ESTRADA with $40 of pre-marked bills (1 x $20 & 2 x $10 bills) (hereafter "Marked Funds"). Based on their training and experience, including identifying and differentiating different narcotics, including fentanyl, and participation in numerous drug-related investigations, officers identified the white chalk-like substance as suspected fentanyl.

14. Following this transaction, the UC walked away from VELAZQUEZ-ESTRADA and gave a prearranged successful buy signal to other nearby officers (hereafter the "Close Cover Officers"). By giving the signal, the UC confirmed that they had just completed a drug transaction. A Close Cover Officer broadcast the description and location of VELAZQUEZ-ESTRADA over the radio. Minutes later, operational team members located and detained VELAZQUEZ-ESTRADA. The UC returned to the scene and confirmed that the detainee was

the individual who had sold the drugs. VELAZQUEZ-ESTRADA was then placed under arrest.

15. After being detained, VELAZQUEZ-ESTRADA told officers her name was Camila Velasquez. Officers in the field used a Mobile Positive identification device (essentially a fingerprint machine), which identified the female as VELAZQUEZ-ESTRADA based on prior arrest records.

16. During a search incident to arrest of VELAZQUEZ-ESTRADA's person, officers located approximately $20.00 in U.S. currency, the same pre-marked $40 the UC used to pay her for the suspected fentanyl, and a cell phone.

17. The purchased drugs were weighed and underwent presumptive testing using a TruNarc handheld narcotics analyzer at the Tenderloin police station. The drugs tested presumptively inconclusive and had a gross weight of 4.1 grams. Based on my training and experience, this inconclusive result is a common occurrence because narcotics dealers commonly use cutting agents to bulk up their product and produce higher profit margins.

18. The suspected fentanyl that was seized in this investigation was sent to the Alameda County Crime lab for further testing. The lab testing confirmed that the seized drugs contained fentanyl and 4ANPP (a precursor for fentanyl) and had a net weight of 0.530 grams.

## CONCLUSION

19. Based on the information set forth in this affidavit, there is probable cause to believe that on or about September 3, 2026, VELAZQUEZ-ESTRADA committed a violation of federal law in that she distributed a mixture or substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and arrest warrant for Emily VELAZQUEZ-ESTRADA.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

_______/s/_________________________
DECLAN J. MAHER
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 8th day of October, 2026.

____________________________
HONORABLE ALEX G. TSE
United States Magistrate Judge